v. Smith Sackman Reed Inc. Argument not to exceed 15 minutes for the plaintiff. 15 minutes for the plaintiff. Mr. McAlpine, you may proceed for the appellant. Thank you. May it please the court, Mark McAlpine on behalf of the appellant W.J. O'Neil, I'd like to have five minutes for rebuttal, if I may. Very well. As the court knows, this is the second time this case has been before this court. Initially, it was filed in the Federal District Court, Eastern District of Michigan, ultimately dismissed based on race judicata appeal to this court. That finding was reversed and the matter was remanded. Following the remand, the court entertained another series of motions for summary disposition, ultimately dismissed the case based on collateral estoppel and then as to the merits on several of the claims that were presented. It's important to know this is a contract dispute arising out of a design and construction of a hospital for the University of Michigan. Initially, W.J. $25 million worth of piping and ductwork and specialty equipment within the hospital, all as designed by these defendants. There was no question that the design was deficient. That was recognized at the project level. The change orders were issued to try to address the issue. Along the way, W.J. O'Neill expended nearly $7 million in additional amounts in order to correct the design deficiencies. Simply put, the decision had been made to shrink the size of the hospital and that shrunk the amount of space that was available to install W.J. O'Neill's work. And so the work had to be substantially redone, redesigned and reconfigured to be installed. It was extraordinarily expensive. This was all done at a time when the general contractor refused to extend the schedule for the project, which required not only the reconfiguration of the systems, but required W.J. O'Neill to massively overman the job and incur, truly incur $7 million in additional expenses. After the project was over, a suit was filed against both Bart Mallow, the general contractor, and the two designers. The district, or the state court, granted a motion to compel arbitration of the dispute between O'Neill and the general contractor, Bart Mallow. That started the arbitration process. Along the way, the university was brought in on a separate arbitration by Bart Mallow, the general contractor. They, in turn, brought in the engineers and they all were there during the arbitration hearing. However, O'Neill's claims against the designers were pending still in state court. There was no agreement to arbitrate those claims. That was extensively argued not only before the state court judge, but in front of the AAA, the arbitration tribunal as well. It was ultimately determined that O'Neill was not required to arbitrate its claims against the engineer. It had no contract with them, no fundamental underlying basis to give jurisdiction to any arbitrator to make these decisions. So the case against the architect-engineer remained pending while the arbitration proceeded. No claims were presented in the arbitration against the engineer-architect. The only claims that were presented were breach of contract against Bart Mallow. Bart Mallow and the university all promised the arbitrators that they were going to pursue indemnity claims against the engineers. Tactically, they chose not to do so. And as a result, and as the court knows from the briefs, at the end of the hearing, a portion of O'Neill's damages were awarded. Only the portion that was allowed by its contract. Now, there was an alternative claim against the contractor for abandonment of that contract. And had that claim succeeded, all of the damages that were incurred, both the direct and consequentials, would have been recoverable. However, the arbitrators decided that the contract was not abandoned and therefore strictly limited O'Neill's recovery to what the contract provided. As you know, Mr. McAlpine, you've been living with this case for a long time, one of the that you are requesting here were actually litigated in the arbitration proceeding. And I understand the difference in contract damages and tort damages and whether you did or didn't agree to arbitrate certain claims. But the gravamen of this seems to be, at least according to the defendants, the claim that by simply seeking the $19 million in the arbitration, which I think you would admit go well beyond what the contract damages were, right? The consequential portions, yes. So for whatever reason, you did put in proofs about those. You didn't apportion them to different defendants. And you sought the full amount. So just explain, if you would please, why at least for the first element of collateral estoppel, you didn't actually litigate what you now want to go back and litigate again, even though you might not have had to. Your Honor, the damages were presented in the guise of an abandonment of contract claim. They were presented. There's no question about that. But they weren't decided. And I think that's the more critical point here. They were not actually decided, even though they were presented, but they were not actually decided as a tort claim. They were reviewed within the prism of the contract. And as you saw from the arbitrator's decision, potential change orders were evaluated. The schedule implications of the underlying design errors is what ultimately caused the panel to award some $2 million in damages. But it was within the scope of the contract. And as we point out in the brief, this particular contract required that the damages be extraordinary and unforeseeable, which is completely foreign to a tort standard of liability. We addressed the issues pursuant to the contract. The damages were presented. They were not decided. Didn't the arbitration proceedings say that the damages were too speculative to be awarded in addition to contract issue precluding that the damages were too speculative? And if that's so, why doesn't that kind of statement count as addressing the issue? Your Honor, you'll recall from the arbitrator's decision, they first said, we're enforcing the contract. We reject the abandonment theory. Then they observed that the contract specifically prohibited consequential damages. And that's the damage element that you're speaking of. They went on gratuitously to say that we don't think it's factually or legally supported. But we can't know whether they were looking at it from the perspective of a breach of contract. In other words, a breach of contract damage analysis looks at the damages as contemplated by the parties at the time they enter into their contract. So the panel, in my view at least, was looking to whether or not consequential damages would have been allowed under the contract if they had not been expressly prohibited by the contract. You're almost claiming that this additional statement that I think you said was gratuitous is dicta. Yes. Were that to have been a decision from a court. We don't, of course we don't apply the same standards to arbitrators that we do to judges in terms of what our obligations are. So do you have any cases that say that even though the arbitration decision does cover these other damages, which from what I can tell are identical to what you still want to pursue, that because it was, quote, gratuitous, end quote, or because it was, quote, dicta or end quote, that that somehow is not still enforceable? It goes even deeper than that. I mean, we've cited the cases in our brief. This is arbitration. The arbitrator has no authority to make any decision on any issue unless it's been specifically agreed to by both parties and granted to him. The contract was observed by the panel to prohibit consequential damages. Let's assume that you had only submitted contract damages and not the consequential damages that are barred by the terms of the contract. If you had only submitted that, then I get your argument. But for whatever reason, you chose to submit damage claims that were beyond the contractual limitation that you were arguing should be enforced, correct? Because we had the abandonment of contract alternative claim. I didn't ask you why. You did do that. So why is that, once having then invited them to rule, I'll bet perhaps on a different theory, why are you not now stuck with the result? Well, truly, they did not have the authority to make that ruling. And that goes back to the underlying arbitration. Well, if you submitted the damages over something that they didn't have the authority to rule on, then that's almost the equivalent of invited error, isn't it? We don't think so, Your Honor. We submitted them, as I said, under an alternative theory of abandonment of contract. But once the arbitrator said the contract wasn't abandoned, they locked themselves into the grant of authority under that contract, and they had no authority whatsoever to rule on the consequential damages. But what if they had said in the order, we find there's a contract and that the contract limits consequential damages. We also note that O'Neill is claiming an abandonment of contract theory, so our ruling is on that, that even had it been abandoned, any damages were too speculative and not recoverable. Would that bind you? I don't think so, Your Honor, but we don't know that is the point. And that's the whole point of the collateral estoppel issue preclusion. It's a very harsh remedy. You've got to know that that's what they were intending. Despite the fact they didn't have jurisdiction to make the ruling, I believe it was a ruling based on the foreseeability of damages between contracting parties, not... You'll concede, will you not, that at least in most arbitration, arbitrators don't even have to give reasons. They could have simply said, you get $2.9 million, period. That would have been an enforceable arbitration award, would it not? I believe in this case the parties required a reasoned opinion, Your Honor. So they were in fact required to give their reasons. Required by the terms of the contract? Yes, in the stipulation of the parties. Good morning, counsel. I guess the defendants have 15 minutes to be shared. How are you going to share your time? We're going to split. I will take eight and Mr. Garish will have seven. All right. Good morning, Your Honor. It's Michelle Thomas on behalf of Shepley Bullfinch, the architect in this case. Judge McKeague, I have to say I think you've made all my arguments for me as to the application of collateral estoppel and I... You don't need to use your eight minutes. Well, and I won't necessarily do that and keep everybody bored, but what I would like to focus on maybe a little bit is the bigger picture here, the policy considerations behind collateral estoppel and that is to avoid the abuse of the judicial process, to avoid parties wasting their own resources. This case has been wasting everybody's resources since 2006. What do you deal... What do you do with Mr. Alpine's argument that you all apparently stipulated that the arbitrators would give a reasoned decision instead of just win-lose and a number? Your Honor, I... He seems to be saying that because you stipulated that, therefore, we can or should go beyond the language in the arbitration decision and look at questions like the one he's raising about, geez, we don't know why they said... Why they even ruled on the alternative theory. Your Honor, I am unaware of anything in the record that indicates the parties did so stipulate to that with respect to the arbitrator's decision. Well, it's got to be either in the contract itself... It's not in the contract. I can tell you that. Or there must... He must be claiming that you reached some sort of side deal as a part of the process of arbitration? He's claiming that and as I said, there's nothing in the record that confirms that. Not in either of these appeals that have been coming back and forth on their federal claims here at all. And as I said, I was not... I did not participate at the arbitration. I took over for the appeal only. But in my mind, it doesn't make a difference because as you pointed out, Judge McKeague, they vigorously pursued their claims against the design professionals during the arbitration. They elected to, they asked the arbitrators to make that ruling and now they should be stuck with it. If they never objected to the arbitrators making that ruling, they never moved to vacate it. And at this point, for them to come back and try to second guess why, again, is just a totally inappropriate use of our system. And this was resolved. So it was in their briefs and all their papers before the arbitration that they were submitting the issue to arbitration, is what you're saying? They zealously submitted it. Their arguments were that this was first and foremost a design malpractice case. Well, you'd have to concede that they didn't submit it to the arbitrators in the context of being based on a tort theory. They did confine their arguments to a breach of contract or an abandonment of contract theory, correct? Correct as to Bart Mallow. So then we look at whether the purpose of tort and contract are different here in terms of restoring the parties to where they would have been without either the breach of contract or without the tort, the design malpractice. And there is no distinction in this case because all they seek are economic damages. It's not a personal injury case. Well, did your client object at the time of arbitration that in tort-related matters and consequential damages and those kinds of things should not be before the arbitration proceeding? We couldn't because that's why we were there. We were brought in by the hospital. And I'm glad that Mr. McAlpine started by saying this is a contract case. It is. And because of the contracts that all the parties executed, including O'Neill, everybody agreed to go to arbitration. This was to be a global arbitration of all the claims. You couldn't object because you were brought in by the hospital. You can object to anything. We were brought in under indemnification claims. Again, this is why it's important to recognize that. That would be the basis to objecting to other claims that shouldn't have been before the arbitration. I don't understand you saying you couldn't object. Because those were the, all right. So if you look at it from the standpoint of how this all came together, O'Neill, Suess, Barton Mallow, and us initially, SBRA. And then Barton Mallow asked for the case to be dismissed in state court because of the arbitration agreement. That's done. You were not a party to the arbitration. We were a party to the arbitration, Your Honor. You were, okay. Yes, we were brought in. So what happens, again, what happened, Barton Mallow then brings in the hospital, who is the owner of the project, okay. The hospital then brings in SBRA, the architects, and the architects in turn bring in SSR. You're just not in privity with O'Neill. We're not in privity with O'Neill, but that didn't stop them from arguing that. We won on the issue of malpractice. You wanted arbitration. We had no choice. We had agreed to arbitration. You didn't object to arbitration. No, we, no. And I assume you wanted everything covered once and for all. Yes. Is that right or wrong? Absolutely. And that is exactly what all the parties agreed to do when they entered their contracts, including O'Neill. They agreed to this global arbitration by incorporating by reference the prime contract between Barton Mallow and U of M. But there's no, there's nothing in the record that says that we, we meaning O'Neill, agree to arbitrate our contract claims, our abandonment of contract claims, and any other tort claims that might be outside the arbitration clause. And we're not going to find that either. We're not going to find that, Your Honor. So we have to imply that by virtue of them seeking damages they knew to be outside the contract limitations. Not only that, but by seeking it by claiming we were negligent. That was the basis of their entire case. I mean, that's where, for me, it just... Negligent in tort as opposed to in breach of a contract you had with them. Correct. Correct. Basically, they're, they're pursuing claims that we commit a malpractice. And because we commit a malpractice, they sustain damages. And that's the source of you arguing this is basically a design defect case. It is a design defect case. They admitted as much this morning. So we get back to the policy considerations. How many times should this issue be litigated? It has been litigated. It should be over. Period. And even assuming collateral estoppel does not apply here, which I think, as far as we're concerned, it does wholeheartedly. They don't, they cannot pursue a negligence claim against us because we did not owe them a duty of care under Michigan common law. Had they wanted to, to, if they wanted to perfect a negligence claim against the architects, they had to plead that we created some type of new hazard on their job site. They didn't. Their claims entirely sound in negligent performance of our contractual obligations that we owed to the hospital. And Supreme Court, Michigan Supreme Court has made it exceedingly clear that's not a basis for a tort claim. If we, if we agree with you on collateral estoppel, do we have to get to this question of duty of care, negligence per se, tortious interference? You do not. We only have to, we only get to that if we find that the claims are not barred by collateral estoppel. Correct. Okay. And I'm willing to rest on my brief as to the tortious interference and innocent misrepresentation claims. Unless the panel has other questions on the tort claim or collateral estoppel. Thank you very much. Thank you. Good morning. Excuse me. Good morning. May it please the court. Jeff Garish on behalf of Smith Suckman. We're similarly situated with my co-defendant. And I just wanted to briefly note, there is a difference between res judicata and collateral estoppel. And I think it's important to understand that because obviously we can't win on res judicata now having lost that before. But collateral estoppel applies when the issue that they're trying to litigate was already litigated. And it doesn't even matter whether we were at the arbitration because mutuality is not required. All that matters is they litigated with everything they had the issue of their damages. All the damages that were caused by our alleged negligence, they were the subject of the arbitration. They litigated that issue with everything they had. And the arbitration panel decided it. They decided it. And this is why it's important to quote from the arbitration panel's ruling. They specifically said that the evidence presented by O'Neill on these issues was too speculative to support the claims and is not supported legally or factually. So they litigated their damages. They lost. The arbitration panel said, you don't have any damages. You didn't prove entitlement to them. They are now trying to litigate the exact same issue against us as a tort claim. And I noticed what Ms. Thomas did too. He began by saying this is a contract claim. Of course it is. That's exactly what it is. That's why it was arbitrated at length on the contracts. And this attempt to sue us in tort is a classic second bite at the apple that they're trying and they shouldn't be allowed to because of collateral estoppel. Now I want to just mention the Rickman unpublished decision because they cited it in their reply on collateral estoppel. Rickman is unpublished. A panel of the Court of Appeals didn't apply collateral estoppel in an attempt to litigate a damages claim in tort because they said there's a difference between tort and contract. But here's the important difference. In that case, the arbitration panel said that they didn't prove causation. They didn't prove that their damages were caused by the breach of contract. And the Michigan Court of Appeals said causation can be different in a tort case versus a contract case. In our case, the arbitration panel didn't find a causation problem. They found that damages don't exist. They said they're not supported legally or factually. The existence of damages. That's why it's the exact same issue and that's why any difference between contract damages and tort damages is irrelevant in this case because they're seeking the exact same damages, the issue that they already lost on in the arbitration. Judge Cleland got that right. He also was correct on the absence of a tort. Judge McKeague, you're right. This is an alternative basis for affirmance. This is what I was going to address. Ms. Thomas was going to focus on. Let me just say quickly on this. To me, the best case is probably Rinaldo's. Judge Clay, you authored a case called DBI Investments that cited Rinaldo's, which says, that's a Michigan Supreme Court case that says, the supposed duty to perform a contract in a non-negligent manner only applies when you have property damage or bodily injury. There is no such claim as negligent performance of a contract causing only economic damages. That's what they're saying. They're saying, we negligently performed our contract causing them economic damages. Under Rinaldo's or Rinaldi's, there is no such claim. And under your decision in DBI Investments, which cites that. But that's really all I have. There are some other points I could make if the court wants me to keep talking. But unless the court has concerns about collateral estoppel that I can try to address, I think I'll also stand on the briefs. Thank you very much. Any rebuttal? I'll go back to what this panel, what this court said the first time around. There was no judgment entered on the arbitration award. This court found that fatal to the application of res judicata. There was no review or judicial evaluation of the award because the party settled right after the hearing. And the award was never reduced to a judgment. Pursuant to the collateral estoppel elements, requirements, that's fatal to the application of collateral estoppel. But counsel... The cases seem to distinguish between res judicata and collateral estoppel in terms of whether there is an enforced or unenforced arbitration award. There is some divergence of opinion. But this court not only said that the lack of an enforceable or lack of a judgment was fatal to res judicata, but it went on to also conclude that even if it had been reviewed by a court, that the issues were not the same. The claims were not the same. The liability standard is different. The damages standard is different. And I do need to correct something brother counsel said. He took the statement that I was asked about, the gratuitous comment about the consequential damages, and tried to apply it to all the damages. And that's just false. There's $7 million of direct damages. Only $2 million were awarded. The other $5 million were not awarded because they were not recoverable under contract. They weren't decided. There was no decision about whether they were incurred, whether they were actual damages or not. So you're saying that the language that you call gratuitous, that said certain damages are speculative, only related to the difference between two and seven, and didn't include the whole 19? All it referred to was the consequential damages. The court, the panel first said, we note that the contract precludes consequential damages. And then they went on and said, in any way, we think they're too speculative and not legally or factually supported. They weren't talking about that $5 million difference between the $2 million and the $7 million, two they awarded and seven that were incurred. They simply said, regardless of what the damages are, you can't get them under your contract. Trying to figure out whether we're talking about two or seven or nine or 19. I thought that the arbitrators, when they said speculative, were talking about everything between the two they awarded and the 19 you requested. We disagree. Where do we look to in the arbitration award for your reading of that award? The exact language I was asked about. In that paragraph, the panel described what they were awarding for. They awarded 2.1, I believe, for the contract schedule changes and then some potential change orders and contract retention. All elements of the contract. They disallowed any consequential damages by the statement that you saw and said, I think, from a contracting perspective, from a contractual damages analysis, they may have been too speculative or unsupported. We don't think that applies to a tort because it's a different standard of liability, different standard of damage calculation. But again, we would be caused to speculate whether the panel was looking at it from a contractual perspective or they were looking at it from a tort perspective because there were no tort claims presented whatsoever in the arbitration. Am I right, though, that the total amount of damages you sought were the same under both your contract slash abandonment of contract theory and what you now want to pursue on your tort theory? In other words, you're not saying, well, geez, there are more tort damages under a tort cause of action that we didn't even talk about in the arbitration. You're not saying that, are you? We're saying the damages that we're pursuing here were not available under the contract. They were presented part of an alternative theory. So they were sought. They were sought. But that's not an element of collateral estoppel. They have to be decided. And they weren't decided. That's critical here. The standard of liability was different. The standard of damages analysis was completely different. And the fact that we asked for something and were denied doesn't mean the matter can't be relitigated on a different claim against a different party. Well, under collateral estoppel, they have to be requested, which they were. They have to be actually litigated, which they were. That's element number one. Element number two, you had to have had a fair opportunity to litigate what it now seeks. What you're claiming is, although you sought it, you didn't have the opportunity to seek it under a tort theory as opposed to a contract theory. That is correct. Do I say that right? Yes. Okay. And it wasn't decided on that tort theory. That's the critical part. They allocated based on contract only. I only have a few seconds left. I really want to draw the panel's attention to the Rickman decision. In candor, I represent Rickman, and I handled that arbitration as well. I can tell you from being involved, they are identical. The exact same thing happened. Direct damages were awarded in the arbitration. Consequential damages were disallowed by the contract. The Michigan Court of Appeals has allowed those consequential damages to be pursued in the face of a collateral estoppel challenge. I'll just say this in closing, if I may. I haven't spoken on the duty issue, but the Lewicki decision of the Michigan Supreme Court is directly on point and contradicts their argument completely. And I would submit that the fact pattern in that case where a contractor was stacking sheets of drywall and did it badly and injured another employee, that contractor was stacking the drywall as part of his contract. That doesn't matter under Michigan law. Anybody who undertakes an action, regardless of why, owes a duty of care not to foreseeably damage somebody. And that's what happened here. We think under the Lewicki decision, the district court simply didn't apply the correct analysis. Thank you very much. And the case shall be submitted. There being no further...